## No. 25396

In Re Questions Submitted by the United States District Court for the District of Colorado Concerning 1965 Perm. Supp., C.R.S. 1963, 13-7-15 and 16 in Civil Action No. C-3260 Entitled Emilia Catherine Sandoval, individually and on behalf of all other persons similarly situated v. John H. Heckers, individually and as Director of the Colorado Department of Revenue; and Gilbert Maes, individually and as an employee of the Colorado Department of Revenue.

(499 P.2d 1169)

Decided August 8, 1972.          Rehearing denied August 28, 1972.

Daniel H. Israel, for Emilia Catherine Sandoval.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for John H. Heckers and Gilbert Maes.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an original proceeding arising upon the certification of three questions to this court by the United States District Court for the District of Colorado under C.A.R. 21.1.

It is implicit from the instrument of certification and the briefs that Emilia Catherine Sandoval, an uninsured motorist, was involved in an automobile accident prior to July 1, 1971, and that the Director of the Colorado Department of Revenue (director) ordered that her license to operate a motor vehicle be suspended.

The following is taken from Sandoval's opening brief here: Sandoval, individually and on behalf of all other persons similarly situated, instituted suit in the United States District Court for the District of Colorado. The suit requested that a three-judge court declare 1965 Perm. Supp., C.R.S. 1963, 13-7-16 unconstitutional and enjoin the director from instituting hearings required by such statute, so long as such hearings resulted in the deprivation of constitutional rights to due process.

1965 Perm. Supp., C.R.S. 1963, 13-7-15 provides generally and in part that, following the report of a motor vehicle accident which has resulted in bodily injury or death or damage to property of any person in excess of $100, if certain conditions apply, the director shall notify an operator of one of the vehicles that his license to operate a motor vehicle will be suspended within 20 days, unless such person posts security to satisfy any judgment which may be recovered as a result of the accident or unless he shall establish that the provisions of the statute are not applicable. The statute provides for a hearing. Section 16, first above mentioned, provides in part:

"(1)(a) The requirement as to deposit of security imposed in section 13-7-15 shall not apply:

"(b) To the operator or owner of a motor vehicle whom the director *finds to be free from any fault* for such accident, and it shall be the duty of the director to make a finding of fact when so requested by any person affected, and for this purpose he shall consider the report of the investigating officer, if any, the accident reports, and any affidavits of persons having knowledge of the facts ...." (Emphasis added.)

The following is taken from the instrument of certification: the statute under attack is interpreted by the director to require the deposit of security following an automobile accident unless the director finds the uninsured motorist to be free from any fault for such accident. Sandoval argued at the license revocation hearing that, since the driver of the other vehicle was driving without lights at dusk on a cloudy and overcast day, the other driver had violated Colorado law and accordingly was negligent. The hearings examiner ignored such testimony, saying it was irrelevant to the question to be determined under the statute, namely, whether or not Sandoval was free from any fault. The certifying document from the three-judge court continues:

"The Attorney General acknowledged at the summary judgment hearing before this court that the Colorado Director of Revenue does not allow consideration at license

revocation hearings of questions of contributory negligence nor of the reasonable possibility or lack of possibility of a judgment being rendered against the motorist whose license is under attack, and that the established policy of the Director of Revenue is to require the posting of security without reference to the possible or probable outcome of future litigation between the parties to the accident."

The questions certified are as follows:

"1. When read in context with other sections of the Act, does section 16 of the Colorado Motor Vehicle Responsibility Act (C.R.C. '63 [1965 Supp.] 13-7-160) require that, in a license revocation hearing, an uninsured motorist demonstrate that he was free from fault in an accident to prevent suspension of his driver's license?

"2. In such a hearing, are the uninsured motorist's degree of fault and the contributory fault of the other party irrelevant?

"3. If Question 1 is answered 'yes,' is Section 15 supra violative of the Constitution of Colorado?"

At oral argument it was stated that the three-judge court in question 3 intended to refer to question 2 instead of question 1. Our answers are such that the discrepancy becomes immaterial.

I.

The first question is answered in the affirmative. We interpret the statutory language that "the director finds to be free from any fault" to mean a finding that there is not a reasonable possibility of a judgment being rendered against the person whose conduct is being considered. Our answer is under this interpretation of the statute. Under the literal construction adopted by the director, the answer to question 1 would be in the negative, since a finding of freedom from any fault goes beyond a finding as to the reasonable possibility of a judgment.

A statute is presumed to be constitutional until clearly shown otherwise. *Dunbar v. Hoffman,* 171 Colo. 481, 468 P.2d 742 (1970); *Asphalt Paving v. County Comm'rs.,* 162 Colo. 254, 425 P.2d 289 (1967). Our interpretation, resulting in the affirmative answer, is born of the rule that a

statute should be given the construction which will render it effective in accomplishing the purpose for which it was enacted. *Pluss v. Department of Revenue,* 173 Colo. 86, 476 P.2d 253 (1970); *Cross v. People,* 122 Colo. 469, 223 P.2d 202 (1950).

"In determining whether an Act of the legislature is constitutional, courts must presume that it was passed with deliberation and with full knowledge of all existing law dealing with the same subject. A statute should be construed in a manner to harmonize it with existing constitutional provisions if it is reasonably possible to do so. *People v. Morgan,* 79 Colo. 504, 246 Pac. 1024; *Harrington v. Harrington,* 58 Colo. 154, 144 Pac. 20. In construing either constitutional or statutory language the first requisite is to inquire what objective was sought to be accomplished by it." *Cooper Motors v. Commissioners,* 131 Colo. 78, 279 P.2d 685 (1955).

*See* also *In Re Interrogatories,* 163 Colo. 113, 429 P.2d 304 (1967) and *Times-Call v. Wingfield,* 159 Colo. 172, 410 P.2d 511 (1966).

In *Bell v. Burson,* 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971), a Georgia statute was before the court. That statute provided that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident should be suspended unless he posted security. It excluded any consideration of fault or responsibility for the accident. It was held that the elimination of the consideration of liability at the hearing concerning revocation of registration and license would be a violation of due process. The United States Supreme Court further held that Georgia under its existing statutory scheme could not deprive the operator of his driver's license and vehicle registration without providing a forum for determination of the question of whether there was a reasonable possibility of a judgment being rendered against him as a result of the accident. The following is taken from the opinion:

"Clearly, however, the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a

full adjudication of the question of liability. That adjudication can only be made in litigation between the parties involved in the accident. Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee."

■ We are of the opinion that it was the intent of the General Assembly to require the posting of security or the suspension of driving privileges when there is a reasonable possibility of a judgment being rendered against the person involved. *Orr v. Superior Court,* 77 Cal. Rptr. 816, 454 P.2d 712 (1969) is supportive.

■ This brings us to the portion of the inquiry which raises the question as to whether the burden of proof is upon the uninsured motorist or upon the director to demonstrate that there is or is not a reasonable possibility of a judgment being rendered against the motorist. The briefs of both parties contain inconsistencies. In his argument under question 1 the Attorney general states that 1965 Perm. Supp., C.R.S. 1963, 13-7-15(2)(a) and (4), and other sections of the act, disclose the intent of the General Assembly to place the burden upon the uninsured motorist. However, in his argument under question 3, the Attorney General states that the "initial burden" is upon the director as the proponent of an order under the State Administrative Procedure Act. 1969 Perm. Supp., C.R.S. 1963, 3-16-4(7).

Counsel for Sandoval makes the following statement in his brief:
"Accordingly, it is clear that the Colorado Motor Vehicle Responsibility Act, as enacted in 1965, contemplated a hearing for an owner or an operator of a motor vehicle involved in an accident to show himself free from any legal fault or legal liability in order to prevent suspension of his driver's license."
This would indicate that counsel considered the burden to be

upon the uninsured motorist. Later in the brief, however, it is argued that under *Bell v. Burson, supra,* the burden is upon the director. We find no such ruling in *Bell v. Burson* and conclude that the Attorney General was correct in his first argument, *i.e.,* that the uninsured motorist has the burden of bringing himself within the exception of Section 16(1)(b). 1965 Perm. Supp., C.R.S. 1963, 13-7-15(2)(a) provides in part, "the person so notified is subject to suspension . . . unless such person . . . shall establish that the provisions of this section are not applicable to him . . . ." Later in sub-section (4) of this Section 15 it states, "the license . . . of any person who does not . . . establish that the provisions of this section are not applicable to him, shall be suspended." This convinces us that it was the legislative intent to place the burden upon the uninsured motorist of showing that there is not a reasonable possibility of a judgment being rendered against him.

## II.

Question 2 reads, "In such a hearing, are the uninsured motorist's degree of fault and the contributory fault of the other party irrelevant?" We answer in the negative.

The doctrine of comparative negligence was adopted by the General Assembly, effective July 1, 1971. 1971 Perm. Supp., C.R.S. 1963, 41-2-14. The parties have discussed question 2 in the light of comparative negligence. The doctrine of comparative negligence cannot be applied to the accident here involved as it occured prior to July 1, 1971, and we are unable to see any use the three-judge United States District Court might make of our observations as to what the situation might be under the new statute. Therefore, the answers here given are strictly limited to the law of negligence as it existed prior to July 1, 1971, *i.e.,* that contributory negligence on the part of a plaintiff prevents him from making any recovery, unless the defendant had a last clear chance to avoid the accident.

A finding as to the reasonable probability of the recovery of a judgment against an uninsured motorist must necessarily

278

in many cases involve a consideration of contributory fault. As was stated in *Bell v. Burson, supra,* this does not involve a detailed, definitive adjudication, but in cases in which contributory negligence is clearly a factor there must be consideration of it. We conclude, therefore, that it cannot be said that contributory fault of the other party is irrelevant.

III.

■■■ Question 3 inquired as to whether 1965 Perm. Supp., C.R.S. 1963, 13-7-15 is violative of the Constitution of Colorado. In the light of our opinions already expressed, we find nothing in the briefs to indicate unconstitutionality. Our answer, therefore, is that we do not perceive unconstitutionality in Section 15.

MR. JUSTICE ERICKSON not participating.