JUSTICE EID
delivered the Opinion of the Court.
¶1 Amber Torrez was confined in Denver County[1] on two unrelated warrants: a Jefferson Cbunty warrant for assault and other charges (the case giving rise to this appeal) and a Denver County warrant for two murder charges. With regard to the Denver County charges, Torrez was held without bond until a jury eventually found her not guilty by reason of insanity (NGRI), at which time'she was committed to Colorado Mental Health Institute at Pueblo (CMHIP). While confined after the NGRI verdict, Torrez pled guilty to the Jefferéon County assault. Tor-rez asked the ’trial court to award her pre-sentence- confinement credit (PSCC) toward her Jefferson County sentence for both the time that she spent confined during the pen-dency of the Denver proceedings, as well as the time she spent at CMHIP after the Denver NGRI verdict. The trial court gave her credit for neither period.
¶2 The court of appeals affirmed in part and reversed in part. It concluded that it was bound by Massey v. People, 736 P.2d 19 (Colo. 1987), and the companion case People v. Freeman, 735 P.2d 879 (Colo. 1987), to find that Torrez was not entitled to PSCC for the time she spent confined prior to the NGRI verdict. People v. Torrez, 2012 COA 51, ¶¶ 3, 38-40, 405 P.3d 243. It reasoned that under Massey and Freeman, credit was not warranted because Torrez would have remained confined even had the Jefferson County charges not existed. Id. at ¶ 40. The court also concluded, however, that Massey and Freeman did not address whether credit should be given for the period Torrez spent confined after the NGRI verdict, and that therefore she was entitled to such credit. Id. at ¶ 41. Torrez asks us to award her credit toward her Jefferson County sentence for both the time that she spent confined during the pendency of the Denver County proceedings, as well as the time she spent confined after the Denver NGRI verdict. The People contend that she is entitled to credit for neither period.
¶3 We agree with the People, and now affirm in part and reverse in part. Section 18-1.3-405, C.R.S. (2017),' instructs that “[a] person who is confined for an offense prior to the imposition of. sentence for said offense” shall be awarded presentence confinement credit. (Emphasis added.) .Under the language of section 18-1.3-406, then, credit is to be given only where the presentence confinement is caused by the charge—or “said offense”—on which the defendant' is being sentenced, here the Jefferson County case. In Massey and Freeman, we held that confínément is caused by the charged offense at issue at sentencing (that is, a “substantial nexus” exists)- only if the defendant would have been released from the confinement had that offense not existed. See Massey, 736 P.2d at 23; Freeman, 735 P.2d at 881, Applying this test to the facts here, because Torrez would have remained confined- prior to and after the NGRI verdict even had the charges in Jefferson County not existed, her presen-tence confinement for those periods is not attributable to this case, and credit is therefore not warranted for either period.'Accordingly, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.
*191 i.
¶4 Torrez wás arrested in Denver on March 29, 2004, on both a Jefferson County warrant for assault and other charges and a Denver County warrant for two murder charges.
¶5 Torrez was held in the Denver County jail without bond. In December 2004, the Denver district court determined that Torrez was incompetent to stand trial and ordered her relocated to CMHIP. In the Jefferson County case, bond was set at $10,000; it was never posted. In March 2005, the Jefferson County court found Torrez incompetent to stand trial on the Jefferson County charges and endorsed her previous relocation to CMHIP.
¶6 In July 2005, the Denver district court determined that Torrez was competent to proceed to trial on the Denver murder charges and relocated her back to Denver. In August 2006, a jury found Torrez not guilty by reason of insanity. The Denver district court ordered that she be returned to CMHIP until her sanity was restored and she could be released pursuant to section 16-8-115(2)(b), C.R.S. (2017).[2]
¶7 While the Denver case was proceeding, Torrez was periodically transferred to Jefferson County on a number of occasions based on writs issued by Jefferson County prosecutors. She spent a total of 86 days in Jefferson County. In January 2007, the Jefferson County district court found Torrez competent to proceed to trial. In June 2008, she entered a guilty plea.[3] On July 25, 2008, the Jefferson County district court sentenced Torrez to ten years in the Department of Corrections (DOC) and granted her 86 days of PSCC, reflecting the time she actually spent in Jefferson County;[4]
¶8 Torrez then appealed the PSCC award, arguing, that she should be credited for . 1579 days of PSCC toward her Jefferson County sentence to reflect the total time she spent confined on the Denver County murder charges prior to the NGRI verdict and subsequent commitment to CMHIP after the NGRI verdict.
¶9 The court of appeals reasoned that the plain language of section 18-1.3-405 “appeared]” to. support crediting Torrez for both the Denver and CMHIP periods.of confinement. Torrez, ¶¶ 16-17. The court also quoted at length from Justice Lohr’s dissents in Massey and Freeman, which would have held that where a defendant is confined on charges from multiple jurisdictions, each charge supplies the requisite “substantial nexus.” Id. at ¶ 31 (quoting Massey, 736 P.2d at 24 (Lohr, J., dissenting)); id. at ¶ 34 (quoting Freeman, 735 P.2d at 882 (Lohr, J., dissenting)). However, with regard to the period of confinement prior to the NGRI verdict, the court concluded that it was bound to follow the majority opinions in Massey and Freeman, which would find a substantial .nexus only if the defendant would have been released had the charges on which the defendant was being sentenced not existed. Id. at ¶ 40. Because Torrez would have remained confined prior to-the NGRI verdict regardless of the Jefferson County charges, the court of appeals concluded that credit was not warranted for that period. Id.
¶10 But Massey and Freeman were not binding precedent, according to the court of appeals, with regard to the period of confinement at CMHIP that followed:-the NGRI verdict. Id. at ¶ 41. The court reasoned that, after the NGRI verdict, there were no longer proceedings pending against Torrez in multiple eases; thus, it concluded that Massey and *192 Freeman no longer barred PSCC. Id. Following this reasoning, the court held that Torrez should be credited for the post-NGRI period of confinement. Id.
¶11 Both Torrez and the People petitioned this court for review. Torrez argued that the court of appeals erred in denying her credit for the pre-NGRI verdict confinement, and the People argued that the court erred in crediting her for the post-NGRI verdict period. We granted certiorari[5] and now affirm in part and reverse in part and remand for further proceedings consistent with this opinion.
II.
¶12 We begin with the PSCC statute. Section 18-1.3-405 provides:
A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement.
(Emphasis added.) Under the language of section 18-1.3-405, credit is to be given only where the presentence confinement is caused by the charge—or “said offense”—on which the defendant is being sentenced. As applied here, the question is whether the presen-tence confinement credit sought by Torrez was caused by the Jefferson County charges.
¶13 The “for an offense” and “said offense” language was added by the General Assembly after this court decided Schubert v. People, 698 P.2d 788 (Colo. 1985). In that case, the defendant was being sentenced on burglary charges stemming from Jefferson County, and he requested that he be credited for the presentence confinement period he had served in connection with unrelated weapon and felony menacing charges in Boulder County. Id. at 790-92. The trial court refused, and the court of appeals affirmed, finding that the statute—which at the time provided that “[a] person who is confined prior to the imposition of sentence is entitled to credit against the term of his sentence”[6]—“implicitly limits the right to presentence confinement credit to that confinement served in connection with the transaction for which the offender is to be sentenced.” Id. at 792.
¶14 We affirmed, rejecting the defendant’s argument that the legislature intended that credit be given “without regard to whether such confinement is related to the transaction for which an offender is ultimately sentenced.” Id. at 793. Instead, we concluded that credit should not be given where confinement was attributable “to a criminal matter which constitutes a separate and independent cause of his confinement,” but rather only where there was a “substantial nexus” between the charge on which the defendant was being sentenced and the confinement. Id. at 794-95. Because the confinement period for which the defendant sought credit stemmed from “a criminal matter which eon-stitute[d] a separate and independent cause of his confinement,” id. at 794, a substantial nexus could not be shown, and the defendant was not entitled to credit, id. at 796-97.
¶15 After Schubert, in 1986, the General Assembly added the emphasized language that “[a] person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit.” Ch. 124, sec. 3, § 16-11-306, 1986 Colo. Sess. Laws 733, 734; see also Massey, 736 P.2d at 21 n.5. Thus, the General Assembly made express what had been implicit in the statute before—namely, that PSCC is warranted where the confinement was caused by the “said offense” on which the defendant was being *193 sentenced. The issue here, then, is whether causation can be shown—that is, whether a substantial nexus exists—between the Jefferson County charges and the periods of confinement for which -Torrez seeks credit.
¶16 With regard to the period of confinement prior to the Denver NGRI verdict, we have already answered this question in the negative. Indeed, in Massey, we faced the precise question we confront today: where a defendant has been confined on offenses from multiple jurisdictions, to which casé should that presentence confinement be credited? In that ease, which was decided under the pre-amendment statutory language,[7] 'the defendant was arrested in Mesa County on two unrelated warrants, one from Mesa County and the other from Pitkin County. Massey, 736 P.2d at 20. The defendant was held in Mesa County for 181 days while being periodically transferred to Pitkin County for eourt appearances. Id. After pleading guilty to both charges, he was sentenced to two years’ probation in both counties. Id. Eight months later, he was arrested in Pitkin County for violating both probationary sentences, and he was confined in Pitkin County for 78 days while proceedings were pending. Id.
¶17 The district court in Pitkin County sentenced the defendant to eighteen months in the DOC and granted him 78 days PSCC reflecting the time he spent actually confined in Pitkin County. The defendant appealed, seeking 181 additional days credited to his Pitkin County sentence. Id.
¶18 Affirming the denial of the defendant’s request, this court found that a “substantial nexus” between the sentencing charge and the confinement period at issue cannot be shown where the defendant would have remained confined had the charge not existed, Id. at 23. More particularly, we found that the defendant in that case “ha[d] not proven, and the record d[id] not establish, that the Pitkin County charges prevented the defendant’s release from the Mesa County jail or contributed to his confinement outside of Pit-kin County.” Id. “Absent such proof,” we declared, “the defendant is not entitled to an award of presentence confinement credit against his Pitkin County sentence for periods of incarceration- in Mesa County.” Id. Comparing the facts of Massey with those in .⅛⅛⅞⅛§⅛ we concluded that the Pitkin County charges were as unrelated to the Mesa County charges- as were the Boulder County charges to the Jefferson County charges in Schubert, and therefore credit was n0^ warranted. Id.
¶19 This court came to the same conclusion, on similar facts, in the companion case of Freeman. There, again applying the pre-amendment statute, this court reiterated the type of causal relationship needed to satisfy the substantial nexus test in such sitúations:
[T]he defendant in this case has not established that the issuance of the Jefferson County arrest warrant delayed the resolution of the, Denver 'County charges, prevented the ’ defendant’s release from the Denver County jail, or contributed in any way to his confinement outside of Jefferson County. The defendant accordingly is not entitled to presentence confinement credit for periods of time he was incarcerated in the Denver County jail.
Freeman, 735 P.2d at 881 (citing, inter alia, Massey). As in Massey, the defendant in Freeman failed to show that he would have been released had the charges in the case on which he was being sentenced not existed, Therefore, a substantial nexus between the charges ■ on which he was being sentenced fnd the confinement for which he wás seek-⅜ credit had not been established, and PSCC credit was not warranted,
¶20 Applying the substantial nexus test from Massey and Freeman to the facts of this case, we' conclude that Torrez was not entitled to PSCC for the period she was confined prior to the NGRI verdict. Torrez was being held in Denver County without bond on the Denver County murder charges, Had the Jefferson County charges not existed, Torrez would have remained confined *194 prior to the NGRI verdict. Her confinement status would have remained precisely the same. Therefore, as the court of appeals correctly concluded, Torrez is not entitled to PSCC for the period she spent confined prior to the NGRI verdict.
¶21 We disagree with the court of appeals, however, with regard to its determination that Torrez was entitled to PSCC for the period after the NGRI verdict. Although the facts of Massey and Freeman did not involve confinement at CMHIP after an NGRI verdict, the substantial nexus test remains the same. The question is whether Torrez would have been released from CMHIP had the charges in Jefferson County not existed. The same answer pertains: she would have remained confined. As in Massey, Torrez has not proven, and the record does not establish that the Jefferson County charges prevented her release from CMHIP or contributed to her confinement outside of Jefferson County after the NGRI verdict. The Jefferson County charges did not prevent her release from CMHIP because her confinement there was due to a separate charge and verdict from Denver County. Therefore, credit was not appropriate, and the court of appeals erred in coming to the contrary conclusion.[8]
¶22 Torrez makes a number of arguments to support PSCC in her case, but we are not persuaded. First, she echoes the court of appeals’ observation, see Torrez, ¶ 3, that Schubert, Massey, and Freeman were all decided under the pre-amendment version of the statute. This does not change our analysis, however. As noted above, the offense-specific language added by the General Assembly in 1986 after Schubert—which focuses on whether sentencing on the particular offense caused the confinement in question— is entirely consistent with the approach taken in Schubert, as confirmed in Massey and Freeman, that focuses on whether there is a causal connection (that is, a substantial nexus) between the sentencing charge and the confinement.
¶23 Again echoing the court of appeals, see Torrez, ¶¶ 16-18, Torrez contends that the plain language of section 18-1,3-405 supports an award for the entire time she was confined prior to the Jefferson County sentencing. She emphasizes that she was confined “for an offense,” and that she therefore must be credited for that confinement. The problem with this interpretation is that it omits the causal component of the statute. As noted above, the statutory language mandates that credit be given for confinement “for an offense” where that confinement is attributable to “said offense.” § 18-1.8-405. Here, “said offense” is the Jefferson Codity case which, as developed above, was not the cause of her confinement under the substantial nexus test.
¶24 Thus, the crux of Torrez’s argument appears to be that Massey and Freeman misapplied the substantial nexus test from Schubert. First, she emphasizes that Justice Lohr was correct in his dissents in Massey and Freeman when he argued that each charge in a multiple-jurisdiction case has a substantial nexus to the confinement, because each charge led to confinement. Massey, 736 P.2d at 24 (Lohr, J., dissenting); Freeman, 735 P.2d at 882 (Lohr, J., dissenting). The problem with this argument is that Justice Lqhr’s position is contrary to the majority rule adopted in Massey and Freeman, which states that a substantial nexus exists where the defendant would have been released had the sentencing charges not existed. We decline Torrez’s implied invitation to set aside the approach adopted by Massey and Freeman some thirty years ago.
¶25 Second, she argues that Massey and Freeman mistakenly imposed an artificial geographic limitation on credit, permitting credit only for confinement that occurs in the charging jurisdiction. Our reasoning in those cases, however, was not so' mechanical. Although geography played a role in both cases, it did so because the cases involved confinement stemming from charges in multiple districts.. As made clear above, our reasoning focused on whether there was a substantial nexus between the sentencing charge *195 and the confinement, and we held that such a nexus was lacking where the defendant would have remained confined regardless of the sentencing charge. The substantial nexus test is about causation, not geography.
¶26 Finally, Torrez argues that Massey and Freeman have been undermined by subsequent case law and statutory amendments. Like the court of appeals, see Torrez, ¶ 37, Torrez notes that this court in People v. Norton, 63 P.3d 339 (Colo. 2003), agreed with Justice Lohr’s observation in his Schubert special concurrence that the majority in Schubert had cited no authority for the proposition that mandatory "presentence confinement credit was designed “to rectify ‘the unequal treatment of indigent offenders who, due to their inability to post bail ... would serve longer periods in jail than their wealthier counterparts who were able to avoid pre-sentence confinement by posting bail and thereby secure their presentence freedom,’ ” see Norton, 63 P.3d at 348 (quoting Schubert, 698 P.2d at 794, and citing Schubert, 698 P.2d at 797 (Lohr, J., specially concurring)). Massey cited this passage from Schubert as well. Massey, 736 P.2d at 21. The flaw in Torrez’s argument, however, is that there is no reason to think that this passage was essential to our explication of the substantial nexus test, such that it would undermine our reasoning in some way in that'regard; on the contrary, the passage appears in the introductory portion of Massey, not in the analysis, see id. We therefore conclude that the Norton decision does not impact our analysis in this case.
¶27 Similarly, we conclude that subsequent statutory amendments do not change the result. Torrez argues that because the General Assembly has never imported the geographic limitation from Massey and Freeman into the language of the statute, despite the fact that it has amended the statute several times since those cases were decided, it must disagree with that limitation. We again attach no significance to the subsequent amendments, And as a preliminary matter, because, as noted above, Massey and Freeman do not impose a geographic limitation, there would be no reason to embrace or disavow such a limitation in the statute.
¶28 Moreover, subsequent statutory amendments—specifically, those made in 1988 and 2009—simply have nothing to do with the issue before us. Both amendments addressed how presentence confinement is to be treated in cases involving parole or incarceration. In 1988, the General Assembly added a provision stating that:
[i]f a defendant is serving a sentence or is on parole for a previous offense when he [or she] commits a new offense and he [or she] continues to serve the sentence 'for the previous offense while charges on the new offense are pending, the credit given for presentence confinement ... shall be granted against the sentence the defendant is currently serving; for the previous offense.
Ch. 110, sec. 2, § 16-11-306, 1988 Colo. Sess. Laws, 663, 663-64. Similarly, in 2009, it added a provision that provides that “[a] person who is confined pending a parole revocation hearing is entitled to credit for the entire period of such confinement against any period of reincarceration imposed in the parole revocation proceeding.” Ch. 105, sec. 3, § 18-1.3-405, 2009 Colo. Sess. Laws 382, 383. These amendments address specific circumstances that are not present in this case. We therefore find them inapposite here.
¶29 In the end, Torrez essentially argues that she must be' given credit towards her Jefferson County sentence because it cannot be given in the Denver case. But this argument misses the mark. Torrez does not receive FSCC not because of the Jefferson County case before us today, but rather because she was- successful in obtaining án NGRI verdict in the Denver case—accordingly, there" was no sentence against' which credit could be given. Because Torrez’s confinement is not attributable to the Jefferson County case, presentence confinement is not warranted. We therefore affirm the court of appeals insofar as it declined to credit Torrez for.the period prior to the NGRI verdict, and reverse the court of appeals with regard to the time she spent confined after the NGRI verdict.
III.
¶30 For the reasons stated above, we affirm in part and reverse in part and remand *196 for further proceedings consistent with this opinion.
JUSTICE MÁRQUEZ dissents.
JUSTICE HOOD dissents, and JUSTICE GABRIEL joins the dissent.

. As explained in more detail below, Torrez was also confined for limited periods at Colorado Mental Health Institute at Pueblo and in Jefferson County during this time as well.

.Section 16-8-115(2)(b) provides:
The court shall order a release examination of the defendant when a current one has not already been furnished or when either the prosecution or defense moves for an examination of the defendant at a different institution or by different experts..,. When none of the reports indicates that the defendant is eligible for release, the defendant's request for release hearing shall be denied by the court if the ■ defendant is unable to show by way of an offer of proof any evidence by a medical expert in mental disorders that would indicate that the defendant is eligible for release.

. Torrez was originally charged with assault of an at-risk adult, robbery of an at-risk adult, and theft of an at-risk adult. She eventually pled guilty to an added count of second-degree assault, and the remaining charges were dismissed.

. The propriety of the 86 days PSCC is an issue not before us.

. We granted certiorari to consider the following issues:
1. [Raised by Petitioner/Cross-Respondent, the People] Whether under section 18-1.3-405, C.R.S. (2011), a defendant is entitled to presentence confinement credit in a pending criminal case for a period of confinement at the Colorado State Hospital based on an unrelated finding of not guilty by reason of insanity.
2. [Raised by Respondent/Cross-Petitioner, Torrez] Whether the award of presentence confinement credit under section 18-1.3-405, C.R.S. (2011), turns on the jurisdiction where a defendant is confined rather than conduct for which a defendant is confined.

. See Ch. 157, sec. 7, § 16-11-306, 1979 Colo. Sess. Laws 664, 665-66; Schubert, 698 P.2d at 793.

. Although the General Assembly had added the "for an offense" and “said offense" language by the time of Massey, the case arose before the amendment, and therefore was governed by the pre-amendment language. See Massey, 736 P.2d at 21 & n.5. The same is true of the companion case of Freeman. See Freeman, 735 P.2d at 881 & n.3.

. Because we conclude that cr.edit was not warranted for the post-NGRI period under the substantial nexus test, we need not consider the People's alternative argument that time spent at CMHIP does not constitute confinement for purposes of PSCC. I