Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 2, 2017

**2017 CO 91**

**No. 12SC488, <u>People v. Torrez</u>—Criminal Law—Sentencing—Presentence Confinement Credit.**

The supreme court reviews the court of appeals opinion crediting the defendant for a confinement period after a not guilty by reason of insanity verdict on an unrelated charge. Under § 18-1.3-405, C.R.S. (2017), credit is to be given only where the presentence confinement is caused by the charge on which the defendant is being sentenced. Considering <u>Massey v. People</u>, 736 P.2d 19 (Colo. 1987), and <u>People v. Freeman</u>, 735 P.2d 879 (Colo. 1987), the supreme court concludes that defendant was not entitled to presentence confinement credit for her confinement before, or after, the not guilty by reason of insanity verdict. Accordingly, the supreme court affirms the judgment of the court of appeals in part and reverses in part, and remands for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 91

### Supreme Court Case No. 12SC448

*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 09CA511

### Petitioner/Cross-Respondent:

The People of the State of Colorado,

v.

### Respondent/Cross-Petitioner:

Amber Lee Torrez.

### Judgment Affirmed in Part and Reversed in Part

*en banc*
October 2, 2017

**Attorneys for Petitioner/Cross-Respondent:**
Cynthia H. Coffman, Attorney General
Matthew S. Holman, First Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Douglas K. Wilson, Public Defender
Anne T. Amicarella, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE EID** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents.
**JUSTICE HOOD** dissents, and **JUSTICE GABRIEL** joins the dissent.

¶1     Amber Torrez was confined in Denver County[1] on two unrelated warrants:  a Jefferson County warrant for assault and other charges (the case giving rise to this appeal) and a Denver County warrant for two murder charges.  With regard to the Denver County charges, Torrez was held without bond until a jury eventually found her not guilty by reason of insanity (NGRI), at which time she was committed to Colorado Mental Health Institute at Pueblo (CMHIP).  While confined after the NGRI verdict, Torrez pled guilty to the Jefferson County assault.  Torrez asked the trial court to award her presentence confinement credit (PSCC) toward her Jefferson County sentence for both the time that she spent confined during the pendency of the Denver proceedings, as well as the time she spent at CMHIP after the Denver NGRI verdict.  The trial court gave her credit for neither period.

¶2     The court of appeals affirmed in part and reversed in part.  It concluded that it was bound by Massey v. People, 736 P.2d 19 (Colo. 1987), and the companion case People v. Freeman, 735 P.2d 879 (Colo. 1987), to find that Torrez was not entitled to PSCC for the time she spent confined prior to the NGRI verdict.  People v. Torrez, 2012 COA 51, ¶¶ 3, 38–40, ___ P.3d ___.  It reasoned that under Massey and Freeman, credit was not warranted because Torrez would have remained confined even had the Jefferson County charges not existed.  Id. at ¶ 40.  The court also concluded, however, that Massey and Freeman did not address whether credit should be given for the period Torrez spent confined after the NGRI verdict, and that therefore she was entitled to

[1] As explained in more detail below, Torrez was also confined for limited periods at Colorado Mental Health Institute at Pueblo and in Jefferson County during this time as well.

2

such credit.  <u>Id.</u> at ¶ 41.  Torrez asks us to award her credit toward her Jefferson County sentence for both the time that she spent confined during the pendency of the Denver County proceedings, as well as the time she spent confined after the Denver NGRI verdict.  The People contend that she is entitled to credit for neither period.

¶3     We agree with the People, and now affirm in part and reverse in part.  Section 18-1.3-405, C.R.S. (2017), instructs that "[a] person who is confined <u>for an offense</u> prior to the imposition of sentence for <u>said offense</u>" shall be awarded presentence confinement credit.  (Emphasis added.)  Under the language of section 18-1.3-405, then, credit is to be given only where the presentence confinement is caused by the charge— or "said offense"—on which the defendant is being sentenced, here the Jefferson County case.  In <u>Massey</u> and <u>Freeman</u>, we held that confinement is caused by the charged offense at issue at sentencing (that is, a "substantial nexus" exists) only if the defendant would have been released from the confinement had that offense not existed.  <u>See</u> <u>Massey</u>, 736 P.2d at 23; <u>Freeman</u>, 735 P.2d at 881.  Applying this test to the facts here, because Torrez would have remained confined prior to and after the NGRI verdict even had the charges in Jefferson County not existed, her presentence confinement for those periods is not attributable to this case, and credit is therefore not warranted for either period.  Accordingly, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

**I.**

¶4     Torrez was arrested in Denver on March 29, 2004, on both a Jefferson County warrant for assault and other charges and a Denver County warrant for two murder charges.

¶5     Torrez was held in the Denver County jail without bond. In December 2004, the Denver district court determined that Torrez was incompetent to stand trial and ordered her relocated to CMHIP. In the Jefferson County case, bond was set at $10,000; it was never posted. In March 2005, the Jefferson County court found Torrez incompetent to stand trial on the Jefferson County charges and endorsed her previous relocation to CMHIP.

¶6     In July 2005, the Denver district court determined that Torrez was competent to proceed to trial on the Denver murder charges and relocated her back to Denver. In August 2006, a jury found Torrez not guilty by reason of insanity. The Denver district court ordered that she be returned to CMHIP until her sanity was restored and she could be released pursuant to section 16-8-115(2)(b), C.R.S. (2017).[2]

---

[2] Section 16-8-115(2)(b) provides:

> The court shall order a release examination of the defendant when a current one has not already been furnished or when either the prosecution or defense moves for an examination of the defendant at a different institution or by different experts . . . . When none of the reports indicates that the defendant is eligible for release, the defendant's request for release hearing shall be denied by the court if the defendant is unable to show by way of an offer of proof any evidence by a medical expert in mental disorders that would indicate that the defendant is eligible for release.

4

¶7 While the Denver case was proceeding, Torrez was periodically transferred to Jefferson County on a number of occasions based on writs issued by Jefferson County prosecutors. She spent a total of 86 days in Jefferson County. In January 2007, the Jefferson County district court found Torrez competent to proceed to trial. In June 2008, she entered a guilty plea.[3] On July 25, 2008, the Jefferson County district court sentenced Torrez to ten years in the Department of Corrections (DOC) and granted her 86 days of PSCC, reflecting the time she actually spent in Jefferson County.[4]

¶8 Torrez then appealed the PSCC award, arguing that she should be credited for 1579 days of PSCC toward her Jefferson County sentence to reflect the total time she spent confined on the Denver County murder charges prior to the NGRI verdict and subsequent commitment to CMHIP after the NGRI verdict.

¶9 The court of appeals reasoned that the plain language of section 18-1.3-405 "appear[ed]" to support crediting Torrez for both the Denver and CMHIP periods of confinement. Torrez, ¶¶ 16–17. The court also quoted at length from Justice Lohr's dissents in Massey and Freeman, which would have held that where a defendant is confined on charges from multiple jurisdictions, each charge supplies the requisite "substantial nexus." Id. at ¶ 31 (quoting Massey, 736 P.2d at 24 (Lohr, J., dissenting)); id. at ¶ 34 (quoting Freeman, 735 P.2d at 882 (Lohr, J., dissenting)). However, with regard to the period of confinement prior to the NGRI verdict, the court concluded that

---

[3] Torrez was originally charged with assault of an at-risk adult, robbery of an at-risk adult, and theft of an at-risk adult. She eventually pled guilty to an added count of second-degree assault, and the remaining charges were dismissed.

[4] The propriety of the 86 days PSCC is an issue not before us.

it was bound to follow the majority opinions in Massey and Freeman, which would find a substantial nexus only if the defendant would have been released had the charges on which the defendant was being sentenced not existed. Id. at ¶ 40. Because Torrez would have remained confined prior to the NGRI verdict regardless of the Jefferson County charges, the court of appeals concluded that credit was not warranted for that period. Id.

¶10    But Massey and Freeman were not binding precedent, according to the court of appeals, with regard to the period of confinement at CMHIP that followed the NGRI verdict. Id. at ¶ 41. The court reasoned that, after the NGRI verdict, there were no longer proceedings pending against Torrez in multiple cases; thus, it concluded that Massey and Freeman no longer barred PSCC. Id. Following this reasoning, the court held that Torrez should be credited for the post-NGRI period of confinement. Id.

¶11    Both Torrez and the People petitioned this court for review. Torrez argued that the court of appeals erred in denying her credit for the pre-NGRI verdict confinement, and the People argued that the court erred in crediting her for the post-NGRI verdict period. We granted certiorari[5] and now affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

_____

[5] We granted certiorari to consider the following issues:

1. [Raised by Petitioner/Cross-Respondent, the People] Whether under section 18-1.3-405, C.R.S. (2011), a defendant is entitled to presentence confinement credit in a pending criminal case for a period of confinement at the Colorado State Hospital based on an unrelated finding of not guilty by reason of insanity.
2. [Raised by Respondent/Cross-Petitioner, Torrez] Whether the award of presentence confinement credit under section 18-1.3-405, C.R.S.

6

¶12     We begin with the PSCC statute.  Section 18-1.3-405 provides:

> A person who is confined <u>for an offense</u> prior to the imposition of sentence <u>for said offense</u> is entitled to credit against the term of his or her sentence for the entire period of such confinement.

 (Emphasis added.)  Under the language of section 18-1.3-405, credit is to be given only where the presentence confinement is caused by the charge—or "said offense"—on which the defendant is being sentenced.  As applied here, the question is whether the presentence confinement credit sought by Torrez was caused by the Jefferson County charges.

¶13     The "for an offense" and "said offense" language was added by the General Assembly after this court decided <u>Schubert v. People</u>, 698 P.2d 788 (Colo. 1985).  In that case, the defendant was being sentenced on burglary charges stemming from Jefferson County, and he requested that he be credited for the presentence confinement period he had served in connection with unrelated weapon and felony menacing charges in Boulder County.  <u>Id.</u> at 790–92.  The trial court refused, and the court of appeals affirmed, finding that the statute—which at the time provided that "[a] person who is confined prior to the imposition of sentence is entitled to credit against the term of his sentence"[6]—"implicitly limits the right to presentence confinement credit to that

---

(2011), turns on the jurisdiction where a defendant is confined rather than conduct for which a defendant is confined.

[6] <u>See</u> Ch. 157, sec. 7, § 16-11-306, 1979 Colo. Sess. Laws 664, 665–66; <u>Schubert</u>, 698 P.2d at 793.

confinement served in connection with the transaction for which the offender is to be sentenced." Id. at 792.

¶14    We affirmed, rejecting the defendant's argument that the legislature intended that credit be given "without regard to whether such confinement is related to the transaction for which an offender is ultimately sentenced." Id. at 793.  Instead, we concluded that credit should not be given where confinement was attributable "to a criminal matter which constitutes a separate and independent cause of his confinement," but rather only where there was a "substantial nexus" between the charge on which the defendant was being sentenced and the confinement. Id. at 794–95. Because the confinement period for which the defendant sought credit stemmed from "a criminal matter which constitute[d] a separate and independent cause of his confinement," id. at 794, a substantial nexus could not be shown, and the defendant was not entitled to credit, id. at 796–97.

¶15    After Schubert, in 1986, the General Assembly added the emphasized language that "[a] person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit." Ch. 124, sec. 3, § 16-11-306, 1986 Colo. Sess. Laws 733, 734; see also Massey, 736 P.2d at 21 n.5. Thus, the General Assembly made express what had been implicit in the statute before—namely, that PSCC is warranted where the confinement was caused by the "said offense" on which the defendant was being sentenced. The issue here, then, is whether causation can be shown—that is, whether a substantial nexus exists—between the Jefferson County charges and the periods of confinement for which Torrez seeks credit.

8

¶16 With regard to the period of confinement prior to the Denver NGRI verdict, we have already answered this question in the negative. Indeed, in Massey, we faced the precise question we confront today: where a defendant has been confined on offenses from multiple jurisdictions, to which case should that presentence confinement be credited? In that case, which was decided under the pre-amendment statutory language,[7] the defendant was arrested in Mesa County on two unrelated warrants, one from Mesa County and the other from Pitkin County. Massey, 736 P.2d at 20. The defendant was held in Mesa County for 181 days while being periodically transferred to Pitkin County for court appearances. Id. After pleading guilty to both charges, he was sentenced to two years' probation in both counties. Id. Eight months later, he was arrested in Pitkin County for violating both probationary sentences, and he was confined in Pitkin County for 78 days while proceedings were pending. Id.

¶17 The district court in Pitkin County sentenced the defendant to eighteen months in the DOC and granted him 78 days PSCC reflecting the time he spent actually confined in Pitkin County. The defendant appealed, seeking 181 additional days credited to his Pitkin County sentence. Id.

¶18 Affirming the denial of the defendant's request, this court found that a "substantial nexus" between the sentencing charge and the confinement period at issue cannot be shown where the defendant would have remained confined had the charge

---

[7] Although the General Assembly had added the "for an offense" and "said offense" language by the time of Massey, the case arose before the amendment, and therefore was governed by the pre-amendment language. See Massey, 736 P.2d at 21 & n.5. The same is true of the companion case of Freeman. See Freeman, 735 P.2d at 881 & n.3.

not existed. Id. at 23. More particularly, we found that the defendant in that case "ha[d] not proven, and the record d[id] not establish, that the Pitkin County charges prevented the defendant's release from the Mesa County jail or contributed to his confinement outside of Pitkin County." Id. "Absent such proof," we declared, "the defendant is not entitled to an award of presentence confinement credit against his Pitkin County sentence for periods of incarceration in Mesa County." Id. Comparing the facts of Massey with those in Schubert, we concluded that "the Pitkin County charges were as unrelated to the Mesa County charges as were the Boulder County charges to the Jefferson County charges in Schubert," and therefore credit was not warranted. Id.

¶19 This court came to the same conclusion, on similar facts, in the companion case of Freeman. There, again applying the pre-amendment statute, this court reiterated the type of causal relationship needed to satisfy the substantial nexus test in such situations:

> [T]he defendant in this case has not established that the issuance of the Jefferson County arrest warrant delayed the resolution of the Denver County charges, prevented the defendant's release from the Denver County jail, or contributed in any way to his confinement outside of Jefferson County. The defendant accordingly is not entitled to presentence confinement credit for periods of time he was incarcerated in the Denver County jail.

Freeman, 735 P.2d at 881 (citing, inter alia, Massey). As in Massey, the defendant in Freeman failed to show that he would have been released had the charges in the case on which he was being sentenced not existed. Therefore, a substantial nexus between the

10

charges on which he was being sentenced and the confinement for which he was seeking credit had not been established, and PSCC credit was not warranted.

¶20 Applying the substantial nexus test from Massey and Freeman to the facts of this case, we conclude that Torrez was not entitled to PSCC for the period she was confined prior to the NGRI verdict. Torrez was being held in Denver County without bond on the Denver County murder charges. Had the Jefferson County charges not existed, Torrez would have remained confined prior to the NGRI verdict. Her confinement status would have remained precisely the same. Therefore, as the court of appeals correctly concluded, Torrez is not entitled to PSCC for the period she spent confined prior to the NGRI verdict.

¶21 We disagree with the court of appeals, however, with regard to its determination that Torrez was entitled to PSCC for the period after the NGRI verdict. Although the facts of Massey and Freeman did not involve confinement at CMHIP after an NGRI verdict, the substantial nexus test remains the same. The question is whether Torrez would have been released from CMHIP had the charges in Jefferson County not existed. The same answer pertains: she would have remained confined. As in Massey, Torrez has not proven, and the record does not establish that the Jefferson County charges prevented her release from CMHIP or contributed to her confinement outside of Jefferson County after the NGRI verdict. The Jefferson County charges did not prevent her release from CMHIP because her confinement there was due to a separate charge

11

and verdict from Denver County. Therefore, credit was not appropriate, and the court of appeals erred in coming to the contrary conclusion.[8]

¶22   Torrez makes a number of arguments to support PSCC in her case, but we are not persuaded. First, she echoes the court of appeals' observation, see Torrez, ¶ 3, that Schubert, Massey, and Freeman were all decided under the pre-amendment version of the statute. This does not change our analysis, however. As noted above, the offense-specific language added by the General Assembly in 1986 after Schubert—which focuses on whether sentencing on the particular offense caused the confinement in question—is entirely consistent with the approach taken in Schubert, as confirmed in Massey and Freeman, that focuses on whether there is a causal connection (that is, a substantial nexus) between the sentencing charge and the confinement.

¶23   Again echoing the court of appeals, see Torrez, ¶¶ 16–18, Torrez contends that the plain language of section 18-1.3-405 supports an award for the entire time she was confined prior to the Jefferson County sentencing. She emphasizes that she was confined "for an offense," and that she therefore must be credited for that confinement. The problem with this interpretation is that it omits the causal component of the statute. As noted above, the statutory language mandates that credit be given for confinement "for an offense" where that confinement is attributable to "said offense." § 18-1.3-405. Here, "said offense" is the Jefferson County case which, as developed above, was not the cause of her confinement under the substantial nexus test.

---

[8] Because we conclude that credit was not warranted for the post-NGRI period under the substantial nexus test, we need not consider the People's alternative argument that time spent at CMHIP does not constitute confinement for purposes of PSCC.

¶24 Thus, the crux of Torrez's argument appears to be that <u>Massey</u> and <u>Freeman</u> misapplied the substantial nexus test from <u>Schubert</u>. First, she emphasizes that Justice Lohr was correct in his dissents in <u>Massey</u> and <u>Freeman</u> when he argued that each charge in a multiple-jurisdiction case has a substantial nexus to the confinement, because each charge led to confinement. <u>Massey</u>, 736 P.2d at 24 (Lohr, J., dissenting); <u>Freeman</u>, 735 P.2d at 882 (Lohr, J., dissenting). The problem with this argument is that Justice Lohr's position is contrary to the majority rule adopted in <u>Massey</u> and <u>Freeman</u>, which states that a substantial nexus exists where the defendant would have been released had the sentencing charges not existed. We decline Torrez's implied invitation to set aside the approach adopted by <u>Massey</u> and <u>Freeman</u> some thirty years ago.

¶25 Second, she argues that <u>Massey</u> and <u>Freeman</u> mistakenly imposed an artificial geographic limitation on credit, permitting credit only for confinement that occurs in the charging jurisdiction. Our reasoning in those cases, however, was not so mechanical. Although geography played a role in both cases, it did so because the cases involved confinement stemming from charges in multiple districts. As made clear above, our reasoning focused on whether there was a substantial nexus between the sentencing charge and the confinement, and we held that such a nexus was lacking where the defendant would have remained confined regardless of the sentencing charge. The substantial nexus test is about causation, not geography.

¶26 Finally, Torrez argues that <u>Massey</u> and <u>Freeman</u> have been undermined by subsequent case law and statutory amendments. Like the court of appeals, <u>see Torrez</u>, ¶ 37, Torrez notes that this court in <u>People v. Norton</u>, 63 P.3d 339 (Colo. 2003), agreed

13

with Justice Lohr's observation in his <u>Schubert</u> special concurrence that the majority in <u>Schubert</u> had cited no authority for the proposition that mandatory presentence confinement credit was designed "to rectify 'the unequal treatment of indigent offenders who, due to their inability to post bail . . . would serve longer periods in jail than their wealthier counterparts who were able to avoid presentence confinement by posting bail and thereby secure their presentence freedom,'" <u>see</u> <u>Norton</u>, 63 P.3d at 348 (quoting <u>Schubert</u>, 698 P.2d at 794, and citing <u>Schubert</u>, 698 P.2d at 797 (Lohr, J., specially concurring)). <u>Massey</u> cited this passage from <u>Schubert</u> as well. <u>Massey</u>, 736 P.2d at 21. The flaw in Torrez's argument, however, is that there is no reason to think that this passage was essential to our explication of the substantial nexus test, such that it would undermine our reasoning in some way in that regard; on the contrary, the passage appears in the introductory portion of <u>Massey</u>, not in the analysis, <u>see</u> <u>id.</u> We therefore conclude that the <u>Norton</u> decision does not impact our analysis in this case.

¶27     Similarly, we conclude that subsequent statutory amendments do not change the result. Torrez argues that because the General Assembly has never imported the geographic limitation from <u>Massey</u> and <u>Freeman</u> into the language of the statute, despite the fact that it has amended the statute several times since those cases were decided, it must disagree with that limitation. We again attach no significance to the subsequent amendments. And as a preliminary matter, because, as noted above, <u>Massey</u> and <u>Freeman</u> do not impose a geographic limitation, there would be no reason to embrace or disavow such a limitation in the statute.

14

¶28 Moreover, subsequent statutory amendments—specifically, those made in 1988 and 2009—simply have nothing to do with the issue before us. Both amendments addressed how presentence confinement is to be treated in cases involving parole or incarceration. In 1988, the General Assembly added a provision stating that:

> [i]f a defendant is serving a sentence or is on parole for a previous offense when he [or she] commits a new offense and he [or she] continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement . . . shall be granted against the sentence the defendant is currently serving for the previous offense.

Ch. 110, sec. 2, § 16-11-306, 1988 Colo. Sess. Laws, 663, 663–64. Similarly, in 2009, it added a provision that provides that "[a] person who is confined pending a parole revocation hearing is entitled to credit for the entire period of such confinement against any period of reincarceration imposed in the parole revocation proceeding." Ch. 105, sec. 3, § 18-1.3-405, 2009 Colo. Sess. Laws 382, 383. These amendments address specific circumstances that are not present in this case. We therefore find them inapposite here.

¶29 In the end, Torrez essentially argues that she must be given credit towards her Jefferson County sentence because it cannot be given in the Denver case. But this argument misses the mark. Torrez does not receive PSCC not because of the Jefferson County case before us today, but rather because she was successful in obtaining an NGRI verdict in the Denver case—accordingly, there was no sentence against which credit could be given. Because Torrez's confinement is not attributable to the Jefferson County case, presentence confinement is not warranted. We therefore affirm the court of appeals insofar as it declined to credit Torrez for the period prior to the NGRI

15

verdict, and reverse the court of appeals with regard to the time she spent confined after the NGRI verdict.

### III.

¶30 For the reasons stated above, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

**JUSTICE MÁRQUEZ** dissents.
**JUSTICE HOOD** dissents, and **JUSTICE GABRIEL** joins the dissent.

JUSTICE MÁRQUEZ, dissenting.

Two basic principles underlie the legislative and judicial history of Colorado's statute governing presentence confinement credit (PSCC), section 18-1.3-405, C.R.S. (2017). First, a defendant is entitled to credit for the full period of her presentence confinement against the total term of her imprisonment. Second, a defendant is not entitled to duplicative credit. Put simply, for each day a defendant is confined prior to sentencing, she is entitled to one day—and only one day—of credit against her ultimate sentence.

I disagree with the majority's decision in this case because it contravenes the principle that a defendant is entitled to credit for the full period of her presentence confinement against the total term of her imprisonment. Specifically, the majority's holding would appear to deny any PSCC to a defendant who is confined on charges stemming from more than one jurisdiction before sentencing—even if the defendant is ultimately convicted on charges in only one jurisdiction. See maj. op. ¶ 3. Indeed, the majority's logic would deny any PSCC even to a defendant confined on multiple charges in a single jurisdiction where the defendant is ultimately sentenced on a different, added charge. But we have repeatedly rejected such a severe framework for awarding PSCC. Instead, our precedents dictate that a defendant is entitled to PSCC toward the sentence on a particular charge if the charge "actually caused" the defendant's presentence confinement, so long as the award would not result in duplicative credit.

1

¶33 As applied to this case, I would conclude that Torrez was entitled to PSCC for the period between her arrest in 2004 and her sentencing on the Jefferson County charges in 2008. During this period of time, the Jefferson County charges "actually caused" Torrez's confinement because the charges prevented her release from confinement: she was arrested on both Jefferson County and Denver County warrants, and she was subject to a $10,000 Jefferson County bond. Regardless of the status of the Denver County charges and the location of her confinement, she could not have secured her presentence release unless she posted the Jefferson County bond, which she never did. Moreover, awarding Torrez credit for the full period of her presentence confinement against the total term of her imprisonment would not result in duplicative credit here because there was no other sentence to which the PSCC could be awarded: Torrez had already been found not guilty by reason of insanity (NGRI) on the Denver County charges when she sought credit against her prison sentence on the Jefferson County charges.

¶34 The majority's holding to the contrary mischaracterizes our long-established precedent on PSCC and fails to effectuate the purposes of the PSCC statute. For these reasons, I respectfully dissent.

### I. The PSCC Statute

¶35 As stated above, two basic principles underlie Colorado's scheme for awarding PSCC. First, a defendant is entitled to credit for the full period of her presentence confinement against the total term of her imprisonment. Second, a defendant is not entitled to duplicative credit. See, e.g., People v. Johnson, 797 P.2d 1296, 1299 (Colo.

2

1990) (directing trial courts to award PSCC "in a manner which furthers the goal of [the PSCC statute,] that is, to insure that defendants receive full, but not duplicative, credit for the period of presentence confinement attributable to the charge or conduct for which they were sentenced").

¶36    The first principle—that an award of PSCC is mandatory—reflects the history of the PSCC statute.  The original version of the PSCC statute provided that a trial court was obligated to <u>consider</u> PSCC, but was not obligated to <u>award</u> it:

> In sentencing a defendant to imprisonment the sentencing judge <u>shall take into consideration</u> that part of any presentence confinement which the defendant has undergone with respect to the transaction for which he is to be sentenced.

Ch. 44, sec. 1, § 39-11-306(1), 1972 Colo. Sess. Laws 190, 249 (emphasis added).

¶37    In 1979, the legislature's first major amendment to the statute made PSCC mandatory, rather than discretionary:

> A person who is confined prior to the imposition of sentence <u>is entitled to credit</u> against the term of his sentence for the entire period of such confinement.

Ch. 157, sec. 7, § 16-11-306, 1979 Colo. Sess. Laws 664, 665–66 (emphasis added).

¶38    Since the 1979 amendment, we have consistently recognized that defendants are statutorily entitled to PSCC.  <u>See, e.g.</u>, <u>People v. Norton</u>, 63 P.3d 339, 348 (Colo. 2003) ("[T]he 1979 amendment made PSCC mandatory."); <u>Fields v. Suthers</u>, 984 P.2d 1167, 1172 (Colo. 1999) ("[The PSCC statute] mandates that presentence confinement in a jail facility becomes part of the time served on the convicted person's sentence." (quoting <u>People v. Freeman</u>, 735 P.2d 879, 881 (Colo. 1987)); <u>Schubert v. People</u>, 698 P.2d 788, 794

(Colo. 1985) ("The 1979 [amendment] . . . grant[ed] an offender 'who is confined prior to the imposition of sentence' a statutory entitlement 'to credit against the term of his sentence for the entire period of such confinement.'").  In other words, for each day a defendant is confined prior to sentencing, the defendant must earn one day of credit against her sentence, if the defendant is ultimately sentenced on any charge for which she was confined.

¶39    The mandatory award of PSCC has important ramifications.  Mandatory PSCC protects indigent defendants "who, due to their inability to post bail . . . would [otherwise] serve longer periods in jail than their wealthier counterparts who were able to avoid presentence confinement by posting bail and thereby secure their presentence freedom."[1]  Schubert, 698 P.2d at 794.  Mandatory PSCC also effectuates the statutory penalties set by the General Assembly by ensuring that a defendant who is convicted of an offense is confined for the legislatively prescribed period of time—and no longer. Cf. Norton, 63 P.3d at 346 (a court's award of PSCC should not "vitiate the intent of the statutory penalty applicable to the crime for which the sentence was imposed").  And mandatory PSCC guards against the added taxpayer expense of paying for superfluous confinement where a defendant serves a lengthy presentence confinement in addition to the legislature's specified sentence of incarceration.  This is a meaningful benefit, given that Colorado's sentencing laws expressly recognize the budgetary impact of prolonged incarceration.  E.g. §§ 18-1.3-302(1)(a)–(b), 16-11.3-101(1)(c)–(d), C.R.S. (2017).

[1] Although we have retreated from our earlier position that protecting indigent defendants was the "obvious purpose" of the PSCC statute, Norton, 63 P.3d at 348, it is clear that mandatory PSCC, in practice, safeguards indigent defendants in this manner.

¶40     The second principle—that an offender is not entitled to duplicative credit—is a logical corollary to the first principle.  That is, while a defendant <u>must</u> receive one day of credit for each day of presentence confinement, she is entitled to <u>only</u> one day of credit against her total term of imprisonment.

¶41     The prohibition on duplicative credit was written into the original PSCC statute because the statute contained an important limitation: a defendant could receive credit only for "presentence confinement which the defendant has undergone <u>with respect to the transaction for which he is to be sentenced</u>."  Ch. 44, sec. 1, § 39-11-306(1), 1972 Colo. Sess. Laws 190, 249 (emphasis added).  A defendant could not, for example, receive an award of credit against a sentence for charges that were prosecuted while a defendant was serving a sentence on an earlier, unrelated conviction.  <u>People v. Loggins</u>, 628 P.2d 111, 112 (Colo. 1981).  Such an award would result in duplicative credit because the defendant would receive two days of credit for each day served: one day of credit against the original sentence, and a second day of presentence credit against the later sentence on the charges brought while the defendant was already incarcerated.

¶42     Although the legislature omitted this "transaction" language when it amended the statute in 1979 to mandate the award of PSCC, we nonetheless construed the provision to require some connection between the confinement and the charge for which the defendant sought credit, precisely to avoid duplicative credit.  In <u>Schubert</u>, for example, we recognized that a contrary interpretation (i.e., awarding credit regardless of the cause of presentence confinement) would result in duplicative credit in certain circumstances, such as where an offender who, prior to sentencing, was already

5

serving time on an earlier sentence. 698 P.2d at 795. Awarding duplicative credits in these circumstances, we reasoned, "not only would reward the multiple offender but also would vitiate, to the extent of such credit, the statutory penalty applicable to the crime for which a particular sentence is imposed." Id. We therefore concluded that an award of credit was warranted only where there existed a "substantial nexus" between a charge or conduct and the period of confinement for which the defendant sought credit, such that the charge or conduct "actually caused" the defendant's presentence confinement. Id.

¶43  Similarly, in Massey v. People, we reaffirmed that a defendant is entitled to PSCC only for a charge with a "substantial nexus" to the defendant's presentence confinement so as to avoid awarding duplicative credit. 736 P.2d 19, 22–23 (Colo. 1987). There, we concluded that the defendant was not entitled to PSCC for time spent in Mesa County jail against his Pitkin County sentence, notwithstanding the fact that he was originally arrested on warrants from both counties, because the Pitkin County charges lacked a "substantial nexus" to the Mesa County confinement. Id. at 23. Although the Massey opinion focused on the jurisdiction of confinement, it did so as a means to avoid duplicative credit:

> [W]here two or more charges form multiple bases for the defendant's presentence confinement, the defendant is entitled to credit against each sentence imposed on those charges, as long as the credit would not be duplicative. A "substantial nexus" in that context means that the defendant would have remained confined in the same judicial district on the charge for which credit is sought in the absence of any other charge.

Id. (citations omitted) (emphasis added).

6

¶44 Our characterization of the legal standard in <u>Massey</u> was driven by the particular facts of that case. Importantly, because Massey's Pitkin County charges did not prevent his release from the Mesa County jail, he was not entitled to credit against those charges. <u>Id.</u> ("The defendant has not proven, and the record does not establish, that the Pitkin County charges prevented the defendant's release from the Mesa County jail or contributed to his confinement outside of Pitkin County."). In other words, <u>Massey</u> relied on the jurisdiction of confinement as a proxy for whether certain charges "actually caused" a defendant's confinement in order to avoid awarding duplicative credit: if the defendant received credit in the jurisdiction of confinement, he could not also receive credit for this confinement elsewhere. And although Justices Lohr and Dubofsky dissented from the majority's disposition of the case, all of the justices agreed with this basic legal framework, including the fact that a defendant is entitled to non-duplicative PSCC where multiple charges concurrently caused the presentence confinement. <u>Id.</u> at 24 (Lohr, J., dissenting) ("As the majority acknowledges, a defendant is entitled to presentence confinement credit 'for each charge that was an actual cause of the defendant's incarceration prior to the imposition of the sentence.'" (quoting the majority opinion)).

¶45 In 1986, the legislature again amended the statute to reincorporate the causation limitation:

> A person who is confined <u>for an offense</u> prior to the imposition of sentence <u>for said offense</u> is entitled to credit against the term of his sentence for the entire period of such confinement.

7

Ch. 124, sec. 3, § 16-11-306, 1986 Colo. Sess. Laws 733, 734 (emphases added).  We have treated the 1986 amendment as a codification of the "substantial nexus" test that we found to be implicit in the statute in Schubert, and therefore, as a mechanism for avoiding duplicative credit.  E.g., Beecroft v. People, 874 P.2d 1041, 1044–45 (Colo. 1994) (construing the amended statute as requiring a "substantial nexus" between the confinement and the charge for which the sentence is imposed (citing Schubert, 698 P.2d at 795)); People v. Hoecher, 822 P.2d 8, 12 (Colo. 1991) (same).

¶46    Finally, the legislature's subsequent amendments to the statute have confirmed the principle that a defendant is not entitled to duplicative credit in any circumstance. In 1988, the legislature added language to prevent an award of duplicative credit to an offender who commits a new offense while serving a sentence or on parole for a previous offense:

> If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

Ch. 110, sec. 2, § 16-11-306, 1988 Colo. Sess. Laws 663, 663–64.  This amendment was "intended to prevent duplicative PSCC being granted to inmates who committed another crime either when they were incarcerated or when they had been released on discretionary parole."  Norton, 63 P.3d at 345.

8

¶47　　Similarly in 2009, the legislature added language clarifying that if a defendant is confined pending a parole revocation hearing, the credit is to be awarded against the period of reincarceration:

> A person who is confined pending a parole revocation hearing is entitled to credit for the entire period of such confinement against any period of reincarceration imposed in the parole revocation proceeding. The period of confinement shall be deducted from the period of reincarceration by the department of corrections.

Ch. 105, sec. 3, § 18-1.3-405, 2009 Colo. Sess. Laws 382, 383. In short, every aspect of this history confirms that avoiding duplicative credit is a foremost goal of the PSCC statute.

¶48　　In light of the two basic principles underlying PSCC in Colorado, I understand the PSCC framework to provide that an award of PSCC is mandatory where a defendant is sentenced on a charge that "actually caused" his presentence confinement, so long as the award would not be duplicative. Contrary to the majority's conclusion, "actual causation" in this context does not mean that the particular charge was a necessary condition or but-for cause of the confinement. Schubert, 698 P.2d at 795 ("causation in this context does not mean that the charge or conduct for which the sentence is to be imposed must be the exclusive cause of the offender's confinement "). Instead, "actual causation" requires only that the charge prevented the defendant's presentence release, regardless of whether other charges also "actually caused" the confinement.

¶49　　Of course in awarding PSCC, a trial court must avoid awarding duplicative credit in instances where a defendant is confined and sentenced on multiple charges. To do so, "the trial court must exercise [its] discretion in a manner which furthers the

9

goal of [the PSCC statute], that is, to insure that defendants receive full, but not duplicative, credit for the period of presentence confinement attributable to the charge or conduct for which they were sentenced." Johnson, 797 P.2d at 1299. For a defendant who receives consecutive sentences, this means that the trial court must award credit against only one charge. Schubert, 698 P.2d at 795. By contrast, for a defendant who receives concurrent sentences, the trial court must award credit against each charge, since concurrent sentences "in functional effect result in one term of imprisonment represented by the longest of the concurrent sentences imposed." Id.

¶50 The majority reaches a very different conclusion about the requirements of the PSCC statute—namely, that a defendant is entitled to PSCC for an offense "only if the defendant would have been released from the confinement had that offense not existed." Maj. op. ¶ 3. That is, according to the majority, the offense for which PSCC is sought must be the sole cause of the presentence confinement. But although the majority purports to adhere to our precedents in reaching its conclusion, maj. op. ¶¶ 16, 24, the majority's conclusion is actually a marked departure from our precedents because we have rejected its formulation of the "substantial nexus" test in at least five instances.[2] In this respect, I agree with Justice Hood's conclusion in his separate dissent that neither the PSCC statute nor our interpretations of the statute support the

---

[2] See Johnson, 797 P.2d at 1298 ("The conduct need not be the exclusive cause of the defendant's confinement . . . ."); Freeman, 735 P.2d at 881 ("In the presentence confinement context, the charges or conduct need not be the exclusive cause of the defendant's confinement . . . ."); Schubert, 698 P.2d at 795 ("[C]ausation in this context does not mean that the charge or conduct for which the sentence is to be imposed must be the exclusive cause of the offender's confinement . . . ."); Massey, 736 P.2d at 22 (same); Torand v. People, 698 P.2d 797, 800 (Colo. 1985) (same).

10

majority's novel formulation of Schubert's "substantial nexus" test. See dis. op. ¶¶ 78, 83.

¶51    The flaw in the majority's reasoning is that it inverts the "substantial nexus" inquiry by posing the wrong counterfactual question. The majority asks what would happen if the sentencing charge did not exist; in such a scenario, would the defendant have been released? Maj. op. ¶¶ 3, 21, 24. But our precedents—namely Schubert and Massey—instruct that we should ask the opposite question: what would happen if only the sentencing charge existed; in such a scenario, would the defendant have remained confined? See Massey, 736 P.2d at 23 ("A 'substantial nexus' . . . means that the defendant would have remained confined in the same judicial district on the charge for which credit is sought in the absence of any other charge."); Schubert, 698 P.2d at 795 ("If . . . the defendant remains confined in [a] jurisdiction on all charges due to his inability to post bail, each charge would appropriately be considered a cause of the defendant's presentence confinement."). By asking the wrong question, the majority has mischaracterized the "substantial nexus" inquiry.

¶52    Moreover, the understanding of the PSCC framework I have set forth does not represent a rejection of the majority holdings in Massey and Freeman and an adoption of Justice Lohr's dissenting view. Those cases confirm the same legal standard I explain above: a defendant is entitled to PSCC if the charge for which credit is sought prevented the defendant's release. We denied PSCC to those defendants, however, because on the appellate record in those cases, we concluded that the answer to the relevant question— whether the defendants would have remained confined on the sentencing charge if no

11

other charges existed—was "no." That is, we concluded that the charges for which they sought PSCC did not "prevent[] the defendant[s'] release" or "contribute[] to [the] confinement" for which they sought credit. Massey, 736 P.2d at 23; accord Freeman, 735 P.2d at 881. And as I have explained above, both the majority and dissenting opinions in Massey and Freeman agreed as to this basic legal framework, a framework that today's majority dismisses in favor of its novel formulation of the "substantial nexus" test.

¶53 Finally, although I agree with much of Justice Hood's separate dissent, I note my disagreement with his understanding of the PSCC framework. Justice Hood infers from the legislature's 1988 and 2009 amendments—which require courts to avoid awarding duplicative credit to offenders who are incarcerated or on parole—that the legislature authorized duplicative credit in other circumstances. Dis. op. ¶¶ 85–86. He would therefore conclude that a court generally may award credit against multiple charges, so long as those charges concurrently caused the defendant's confinement. Id. at ¶ 87. But as I have explained above, avoiding duplicative credit in all circumstances has consistently been a foremost goal of Colorado's PSCC scheme. I therefore conclude that the legislature's 1988 and 2009 amendments are best understood as legislative patches to effectuate the general prohibition on duplicative credit in specific scenarios where the legislature realized that there otherwise existed a risk of awarding duplicative credit. See Norton, 63 P.3d at 345.

12

## II. Application

¶54    I would conclude that Torrez was entitled to PSCC for the entire 1579-day period from her arrest in March 2004 through her sentencing in July 2008. First, Torrez was confined during this entire period—at times in Jefferson County, at times in Denver County, and at times at the Colorado Mental Health Institute at Pueblo (CMHIP).[3]

¶55    Second, at all times, Torrez was confined "for" the Jefferson County assault charge to which she ultimately pled guilty. She was originally arrested on warrants from both Denver County and Jefferson County. And she was subject to a $10,000 Jefferson County bond, which she never posted. If the Denver County charges had been dismissed—or had never existed—Torrez's confinement status would have remained precisely the same. In other words, regardless of her location, the Jefferson County charges had a "substantial nexus" to Torrez's confinement because they caused her to remain confined. See Massey, 736 P.2d at 23 ("A 'substantial nexus' . . . means that the defendant would have remained confined . . . in the absence of any other charge."). Although the Denver County charges and the eventual NGRI verdict caused Torrez's confinement at a particular location, i.e., at CMHIP rather than some other facility, see maj. op. ¶ 21, in the absence of the Denver County charges Torrez still

---

[3] Because the majority concludes that the Jefferson County charges lacked a "substantial nexus" to Torrez's confinement, it does not reach the question of whether time spent at CMHIP constitutes "confinement" for purposes of PSCC. Maj. op. ¶ 21 n.8. I, however, would agree with the court of appeals' conclusion that time spent at CMHIP constitutes "confinement" for which an offender may receive PSCC. Torrez, ¶ 17; see People v. McGraw, 30 P.3d 835, 840 (Colo. App. 2001) (concluding that an offender, while involuntarily hospitalized at CMHIP, was "confined in a very real sense").

13

would have remained confined because of the Jefferson County charges for which she never posted bond.

¶56 Third, awarding Torrez the full 1579 days of PSCC toward her sentence on the Jefferson County charges would not result in an award of duplicative credit. Although multiple charges concurrently caused Torrez's confinement, she ultimately received only a single sentence. Thus, there is only one sentence to which the credit can be applied, and there is no risk of awarding duplicative credit. Nor would Torrez's entitlement to PSCC change if she had been convicted of one or more of the other charges for which she was confined prior to sentencing. In such a circumstance, we have directed trial courts to exercise their discretion in allocating PSCC so as to ensure an award of full, but not duplicative, credit. Johnson, 797 P.2d at 1299.

¶57 The majority's conclusion that Torrez is not entitled to PSCC produces an anomalous result. I doubt the legislature intended this result when it has provided all defendants with a statutory entitlement to credit for the "entire period" of presentence confinement attributable to the sentencing charge. See § 18-1.3-405.

### III. Conclusion

¶58 The requirements of Colorado's presentence confinement statute are simple: one day of presentence confinement entitles a defendant to one day of credit against her ultimate sentence—no more, no less. The majority, however, concludes that this principle apparently does not apply to defendants who are subject to charges in multiple jurisdictions, and indeed, its logic would deny any PSCC to a defendant confined on multiple charges in a single jurisdiction where the defendant is ultimately

14

sentenced on a different, added charge.  Because that conclusion finds no support in the text of the statute or our long-established precedent, I respectfully dissent.

JUSTICE HOOD, dissenting.

¶59  Amber Lee Torrez spent more than four years confined before serving a sentence for any crime.  In the end, the trial court allowed her to credit 86 of those 1579 days toward the sentence it imposed.  The majority would afford her even less: If it could consider the 86 days she did receive, its test would strip her of that credit as well.  And more broadly, its holding seems to deny presentence confinement credit to every offender confined on multiple charges.

¶60  How does this counterintuitive result emerge?  The answer in part is that in purporting to recite our test for determining whether an offender should receive presentence confinement credit (PSCC), the majority instead rewrites it.  This court previously asked whether an offender confined on multiple charges would have "remained confined <u>in the same judicial district</u> on the charge for which credit is sought in the absence of any other charge."  <u>Massey v. People</u>, 736 P.2d 19, 23 (Colo. 1987) (emphasis added).  Now, however, the majority states that an offender cannot receive credit if she "would have remained confined regardless of the sentencing charge."  Maj. op. ¶ 25.

¶61  Some simple hypotheticals demonstrate how omitting the place-based language makes a difference.  Suppose Jane Doe injures a pedestrian in a hit-and-run, for which Durango issues an arrest warrant against her.  A month later, she runs headlong into Durango Police while robbing a convenience store.  That encounter places her in the La Plata County jail on both charges, where she stays until she's convicted and sentenced.  Under our now-discarded test, she would have received credit for that entire period of

1

confinement. Under the new test, because she would have remained confined on one of the charges in the absence of the other, arguably she receives none.

¶62 Or consider an even likelier scenario. The People charge Doe with multiple offenses arising out of a single incident (as was the case for Torrez in Jefferson County). She remains in the same jail throughout proceedings. Doe eventually pleads guilty to one of the charges, and the court dismisses the rest. Here again, though our former test would have entitled Doe to credit, the majority's new test seemingly offers her none — she would have remained confined in the absence of the sentencing charge, given the remaining charges. And if she had instead chosen a trial and lost? The same.

¶63 As I read the majority's new test, then, only offenders whose confinement is solely attributable to the sentencing charge will receive credit. We have never before required such a result, and the presentence confinement statute's plain language does not compel it. To the contrary, that statute entitles Torrez to credit for her full period of confinement. Therefore, I respectfully dissent.

¶64 In crafting my dissent, I write more expansively than I otherwise might, so that the legislature can perhaps better evaluate whether it should intercede to make its intentions more plain, particularly given the significant implications today's majority opinion holds for defendants' liberty interest and the state budget.

## I. Analysis

¶65 Neither our precedent nor the language of the current PSCC statute supports the test the majority announces today. Instead, this court has used geography as a proxy to determine whether an offense caused a defendant's confinement for purposes of section

2

18-1.3-405, C.R.S. (2017). Even that place-based test looks suspect, however, given that the legislature has overhauled section 18-1.3-405 since we last explored its requirements. With those changes, the legislature granted credit broadly and narrowed that broad grant where it might prove problematic. Because Torrez's circumstances do not fall within any of those limitations, and her Jefferson County offense concurrently caused her confinement, I conclude section 18-1.3-405 entitles her to PSCC for the entire time she spent confined—namely, from the time of her arrest until she was sentenced for the Jefferson County offense.

### A. We Have Never Employed the Test the Majority Articulates Today

¶66 The presentence confinement statute has evolved in response to interpretations from this court. I relate that history more fully below and provide examples along the way to illustrate the effects of various changes and interpretations, but my analysis in this subsection reduces to three points. First, early iterations of the PSCC statute left significant ambiguities regarding its application. Second, in the absence of legislative guidance, this court created its own framework for awarding credit. Third, from this overview, I conclude not only that we have never employed the test the majority articulates today, but that the new test requires results at odds with those we have approved.

¶67 The original, 1972 PSCC statute merely required a sentencing judge to take presentence confinement "into consideration" but did not mandate an award. Ch. 44, sec. 1, § 39-11-306, 1972 Colo. Sess. Laws 190, 249. It survived only seven years. After

courts consistently construed the 1972 statute to allow discretion in awarding PSCC, the legislature repealed and replaced it in 1979.[1] Schubert v. People, 698 P.2d 788, 792–93 (Colo. 1985) (discussing statutory history related to People v. Jones, 489 P.2d 596, 599–601 (Colo. 1971)).

¶68 The 1979 language mandated PSCC but created new difficulties because it appeared to require credit for any period of presentence confinement, no matter its cause. As written, the statute eliminated a disincentive to reoffend while confined because it seemed to credit time already served against both new and old sentences. See id. at 795. If, for example, an offender assaulted a prison guard and then spent 100 days confined before being sentenced for the assault, the statute appeared to credit 100 days toward her original sentence as well as 100 days toward her new sentence on the assault charge. Thus, the assault would go largely unpunished.

¶69 Addressing that anomaly, our court created the "substantial nexus" text. Under that test, we required courts to consider two factors. First, we held that "the presentence confinement [must be] actually caused by the charge or conduct for which

---

[1] The 1979 statute read as follows:

> A person who is confined prior to the imposition of sentence is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections.

Ch. 157, sec. 7, § 16-11-306, 1979 Colo. Sess. Laws 664, 665–66.

the offender is to be sentenced[.]" Id. Second, contrary to the majority's understanding, we observed that multiple offenses could concurrently cause a defendant's confinement and added, "[T]here must be a substantial nexus between such charge or conduct and the period of confinement for which credit is sought." Id. Thus, under the framework we announced, the prison assailant from the earlier example would receive 100 days of credit toward her original sentence, but not toward the new one. See id.

¶70     In illustrating how to apply this new test, we went on to suggest an additional consideration: whether, in the event multiple offenses caused the confinement, they originated in the confining jurisdiction. To that end, we said,

> If, for example, multiple counts or cases are concurrently filed against a defendant in the same jurisdiction, and the defendant remains confined in that jurisdiction on all charges due to his inability to post bail, each charge would appropriately be considered a cause of the defendant's presentence confinement. . . . If only one sentence is ultimately imposed and the other concurrently filed counts or cases are dismissed, then clearly the defendant should be credited with the entire period of presentence confinement served in the sentencing jurisdiction against the sentence.

Id. at 795–96 (emphases added) (citation omitted). We further noted that even if the charges were not filed concurrently, the statute still required courts to credit the period of confinement following the later-filed charge toward the sentence resulting from that charge. Id. at 796 n.13. And, taking the same position in Schubert's companion case, Torand v. People, 698 P.2d 797, 801 (Colo. 1985), we held that "the pendency of another case in the same jurisdiction [did not] serve to negate the substantial nexus between the charges in the instant case and the defendant's confinement." (Emphasis added.)

5

¶71    Under the test we articulated in Schubert and Torand, if an offender were confined for 100 days in a Denver jail on a Denver assault charge as well as a Denver burglary charge, she could credit all 100 days toward her sentences for both, or could credit the 100 days against one of the sentences if the other charge were dismissed.

¶72    The majority, on the other hand, seemingly would offer her no credit at all because she would not "have been released from the confinement had [either the assault charge or the burglary charge] not existed." See maj. op. ¶ 3.  In fact, the majority's new test renders Torand wrongly decided: Under the majority's test "the pendency of another case in the same jurisdiction" does negate the substantial nexus and destroys and offender's right to credit.

¶73    Still, the majority also roots its rule in Massey, a case we decided two years after announcing Schubert and Torand.  Again construing the 1979 statute, we returned to the substantial nexus test and, far from adopting the majority's but-for test, we made Schubert's suggested geographic limitation part of our rule.

¶74    In Massey, a defendant arrested on warrants from Mesa and Pitkin Counties sought credit in Pitkin County for his time spent confined in Mesa County while waiting to resolve the charges from both counties.  736 P.2d at 20.  Worried about awarding duplicative credit, yet finding no statutory guidance on the issue, we looked to Schubert's illustration and adapted the substantial nexus test to the circumstances.  We therefore held, "A 'substantial nexus' [where two or more charges form multiple bases for the defendant's presentence confinement] means that the defendant would have remained confined in the same judicial district on the charge for which credit is

6

sought in the absence of any other charge." Id. at 23 (emphasis added). Applying that test, we determined the defendant was entitled to PSCC only for the time he spent confined in the jurisdiction issuing the sentence. Id.

¶75 Consider, under this scheme, the example of the multiple offender. This time the offender is charged in two cases from Denver, one for burglary and the other for assault. She spends 100 days confined before beginning to serve her sentences, but of those 100 days, she spends 15 days resolving the assault charge, 30 days resolving her burglary charge, and 55 days waiting for the cases to move forward. Under the Massey test, the court must credit her 100 days of confinement toward the sentences for both offenses because she would have remained confined in the jurisdiction on either charge in the absence of the other.

¶76 Now consider the effect of the same charges if Adams County files the burglary charge. The offender spends 15 days in Denver resolving the Denver assault charge, 30 days in Adams County resolving the burglary charge, and 55 days in Denver waiting for the cases to move forward. Under Massey, the court must credit 70 days toward her sentence on the assault charge, and 30 days toward her sentence on the burglary charge. Furthermore, if the assault charge is dismissed in the Denver-only example, the offender receives credit for all 100 days. If it is dismissed in the Denver/Adams County example, the offender receives only 30 days of credit. When maintaining a causal common denominator, then, geography makes all the difference.

7

¶77 The majority collapses the geographic distinction, but only by denying the multiple offender credit in both scenarios. In either scenario, the offender would not have been released had the sentencing offense not existed.

¶78 Despite reciting the words "substantial nexus," then, it seems the majority has eliminated any opportunity for credit for an offender confined on multiple charges. Yet, as Schubert makes clear, we created the substantial nexus test precisely because we recognized that multiple offenses could concurrently cause an offender's confinement. Not anymore, it seems. And though the majority is of course free to disavow Schubert's test and to declare that Torand was wrongly decided, stare decisis at the very least requires it to explain why its new test is better suited to the task. See People v. Kutlak, 2016 CO 1, ¶ 18, 364 P.3d 199, 205 (observing that this court departs from an established rule only upon good reason). It has not done so.

¶79 Perhaps, then, the new test emerges from the legislative retrofit that followed those cases? Let's see.

### B. Section 18-1.3-405 Does Not Mandate the Majority's Test

¶80 The General Assembly has not mandated, as the majority now does, that an offender's confinement must be solely attributable to the charge for which she seeks credit. On the contrary, nothing in the statute's plain language prevents a court from awarding credit when more than one offense causes a defendant's confinement.

¶81 Responding to Schubert in 1986, the legislature added its own, broad causal requirement: "A person who is confined for an offense prior to the imposition of

8

sentence <u>for said offense</u> is entitled to credit against the term of his sentence for the entire period of such confinement." Ch. 124, sec. 3, § 16-11-306, 1986 Colo. Sess. Laws 733, 734 (additions emphasized). Then, in 1988, the General Assembly inserted language addressing the prison-assault scenario that had worried the court in <u>Schubert</u>. Ch. 110, sec. 2, § 16-11-306, 1988 Colo. Sess. Laws 663, 663–64. And in 2009, the legislature inserted language directing courts to credit an offender's confinement pending a parole revocation hearing toward any period of reincarceration imposed in the parole revocation proceeding. Ch. 105, sec. 3, § 18-1.3-405, 2009 Colo. Sess. Laws 382, 383. Thus, the statute now states as follows:

- A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement. . . .

- A person who is confined pending a parole revocation hearing is entitled to credit for the entire period of such confinement against any period of reincarceration imposed in the parole revocation proceeding. . . .

- If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

§ 18-1.3-405.

¶82    To determine whether the statute compels or at least supports the majority's test, I use our standard rules of statutory construction. When a statute's language is clear,

9

this court must apply it as written. People v. Smith, 2014 CO 10, ¶ 13, 318 P.3d 472, 476 (interpreting section 18-1.3-405).

¶83 We cannot add words to the statute, id., yet the majority does just that. Read naturally, the word "for" doesn't require exclusivity. If a doctor's office places a sign in the waiting room that reads, "Those visiting for a condition must cover the cost of consultation for said condition before leaving," I very much doubt I could avoid paying just because the doctor attended to both my sore throat and broken toe. Yet this is exactly how the majority interprets the PSCC statute—not as written, but rather to say, "A person who is confined for an offense and only that offense . . . is entitled to credit . . . ."

## C. Section 18-1.3-405 Grants Credit Broadly and Confines it Where it May Prove Problematic

¶84 Having concluded the majority's test finds no support in our precedent or the statute's text, I consider what the current statute does require. Although I see the allure in simply concluding Massey's bright-line, place-based test has endured, I cannot apply the old test to the current statute without first assessing whether the statute still requires that test. See Specialty Rests. Corp. v. Nelson, 231 P.3d 393, 403 (Colo. 2010). Looking to the current statute's plain text, I do not read it to require such disparate treatment based on geography alone.

¶85 This court created the geographic limitation in the absence of any specific instructions from the legislature. The legislature has since supplied those instructions. With its 1986 amendment, the legislature identified the causal requirement we thought

10

lacking in Schubert, stating broadly, "A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement." § 18-1.3-405 (emphases added). Similarly, with its 1988 and 2009 amendments, the legislature identified precise scenarios under which courts must avoid awarding duplicative credit: when (1) an offender is already serving a sentence or is on parole or (2) an offender's conduct has triggered parole revocation proceedings. See id.

¶86 I see nothing instructing courts to award credit against the sentences for multiple offenses charged in the confining jurisdiction but not toward those charged in other jurisdictions. To the contrary, the legislature has required courts to award credit for confinement "for an offense" so long as the offender was confined "prior to the imposition of sentence for [that] offense." Id. And this makes sense: A defendant facing multiple charges is just as much confined "for an offense" whether the other charge preventing her release originated within the confining jurisdiction or without. Further, the inclusion of the two specific limitations to this general rule suggests legislative intent that there be no others, such as a geographic limitation. See Cain v. People, 2014 CO 49, ¶ 13, 327 P.3d 249, 253 ("[W]e read the General Assembly's inclusion of a single, specific, narrow exception to mean that the General Assembly intended that there be no other exceptions to the rule . . . .").

¶87 Thus, when multiple offenses concurrently cause an offender's confinement and only one of them results in a sentence, I conclude she is equally entitled to credit for her entire period of confinement concurrently caused by those offenses, irrespective of

11

where her confinement occurred. To effectuate the statutory purpose, she must receive credit somewhere. See § 18-1.3-405.

¶88 And while I must presume the General Assembly legislates with awareness of our case law, Vigil v. Franklin, 103 P.3d 322, 327 (Colo. 2004), three circumstances suggest that the legislature's amendments do not include or incorporate Massey's geographic restriction. First, the current statute's plain language covers the same territory as our cases with greater specificity—the 1986, 1988, and 2009 amendments correspond precisely to the concerns we raised in Schubert, 698 P.2d at 795, and Torand, 698 P.2d at 800–01. See Robles v. People, 811 P.2d 804, 806 (Colo. 1991) (holding that when the legislature adds more specific sections to a general section, it may indicate an intent to clarify the existing statute). Second, although we sometimes infer intent to ratify case law when the legislature amends a statute but leaves a previously interpreted provision unchanged, see Specialty Rests. Corp., 231 P.3d at 403, that inference is unjustified here because the provision Massey interpreted did change. Third, the current statute directly contravenes Massey by requiring some credit across jurisdictions: It explicitly contemplates that offenders serving an existing sentence in one jurisdiction will receive credit on that sentence for presentence confinement in another jurisdiction on a new charge.

¶89 Finally, I note that while I have now arrived at the position Justice Lohr advanced in his dissents to Massey and Freeman, I have done so because that is the outcome the PSCC statute's current plain language best supports. The General Assembly has stated the required causal connection and has limited its effects where

12

necessary. This court should go no further. That those limitations require results at odds with those the Massey test would have produced only further convinces me that the legislature did not intend for us to retain Massey's geographic limitation.

¶90   Thus, I would conclude that section 18-1.3-405 does not require an offender seeking PSCC to show she would have remained confined in the same jurisdiction on the charge for which credit is sought in the absence of any other charge. Instead, she must show that she was confined for an offense before being sentenced for that offense and that the offense shares a substantial nexus with the period of confinement for which she seeks credit.

## D. Application

¶91   Applying my understanding of the substantial nexus test to the facts here, I conclude Torrez is entitled to PSCC for the more than four years she spent confined before being sentenced on any offense—from her arrest in Denver on March 23, 2004, until she was sentenced in Jefferson County on July 25, 2008. The record demonstrates that throughout that period, the offenses in both counties concurrently caused her confinement and that her confinement shared a substantial nexus with the Jefferson County offense.

¶92   First, the parties do not dispute that Torrez was arrested on both warrants before being jailed in Denver. At all times before the Denver jury issued its not-guilty-by-reason-of-insanity verdict, Torrez was confined—wherever she may have found herself at the time—on both the Denver and Jefferson County charges. And following that verdict, the Jefferson County order continued to confine Torrez in CMHIP, where she

13

spent nearly two more years before pleading guilty and receiving her sentence in Jefferson County. The Jefferson County offense was therefore an actual cause of her confinement. Second, no other offense had already initiated Torrez's confinement, and until its resolution more than four years after her initial arrest, the Jefferson County offense continued to prevent her release. Thus, the Jefferson County offense satisfies the substantial nexus requirement in this context.

¶93 Moreover, because I agree with the court of appeals, People v. Torrez, 2012 COA 51, ¶ 17, ___ P.3d ___, and Justice Márquez, dis. op. ¶ 54 n.3, that time spent in CMHIP constitutes confinement under section 18-1.3-405 (the term's ordinary meaning confirms that conclusion, and this court has never held otherwise), I believe Torrez must receive credit for her period of confinement there as well. On these facts, so long as proceedings on the Jefferson County offense remained unresolved, Torrez was "confined for an offense prior to the imposition of sentence for said offense," irrespective of where that confinement took place. Section 18-1.3-405 therefore entitles her to credit against the Jefferson County sentence for her entire period of confinement.

## II. Conclusion

¶94 The majority today directs courts to award PSCC only when a defendant "would have been released . . . had [the sentencing charges] not existed." Maj. op. ¶ 3. This court has never employed such a test, and the statute does not compel it. Instead, I conclude the General Assembly's amendments to that statute demonstrate its intent to offer a broad grant of credit, which in turn entitles Torrez to PSCC on these facts. Therefore, I respectfully dissent.

14

I am authorized to state that JUSTICE GABRIEL joins in this dissent.